# In the United States Court of Federal Claims

### No. 11-273C
### Filed: November 22, 2016
### Issued for Publication: January 9, 2017[1]

\* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **DEXTER SMALL,** | \* |
| | \* |
| **Plaintiff,** | \* |
| **v.** | \* |
| | \* **Equal Access to Justice Act,** |
| **UNITED STATES,** | \* **28 U.S.C. § 2412; Attorney's** |
| | \* **Fees and Reasonable** |
| **Defendant.** | \* **Expenses.** |

\* \* \* \* \* \* \* \* \* \* \* \* \*   \*

---

**Peter J. Sarda**, Creech Law Firm, P.A., Raleigh, NC, for plaintiff.

**Agatha Koprowski**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With her were **Kenneth D. Woodrow**, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was **Major Angela D. Swilley**, Military Personnel Litigation Branch, United States Army Litigation Division.

## O P I N I O N

### HORN, J.

Plaintiff Dexter Small filed an application for attorney's fees and other expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (2012), in an effort to recover the attorney's fees and reasonable expenses he incurred while litigating the above-captioned case. Plaintiff's motion for attorney's fees and expenses comes after litigation in this court arising from plaintiff's allegedly improper administrative separation from the United States Army (Army) by defendant. Plaintiff alleges that he is entitled to recover attorney's fees and costs pursuant to EAJA because he "was a prevailing party and because the Government's position was not substantially justified" throughout the

---

[1] This opinion was issued under seal on November 22, 2016. The court afforded the parties an opportunity to propose redactions in the published opinion and the parties did not seek any redactions. The opinion is issued in full below.

litigation of this case.[2]

## FINDINGS OF FACT

Plaintiff enlisted in the Army on December 1, 1997 and continued his service until February 25, 2011, when he was administratively discharged from the Army. During his cumulative military service, plaintiff served two tours in Kosovo, two tours in Iraq, and one tour in Afghanistan. From March 28, 2007 to April 30, 2007, plaintiff was deployed to Salah Ad Din, Iraq, in support of Operation Iraqi Freedom. While in Iraq, plaintiff was injured during a raid with his unit, when the house Mr. Small's platoon approached was detonated by a remotely-triggered explosive device. Plaintiff was medically evacuated by helicopter to the Balad Joint Services Hospital, Iraq, where he was treated for a concussion and bruises to his extremities. Plaintiff later returned to his unit and completed his tour of duty in Iraq. Shortly after his hospitalization, on March 29, 2007, plaintiff assaulted a detained Iraqi by grabbing him by the throat, placing a loaded M-9 pistol to his head, and striking him on the forehead with the pistol. Plaintiff's punishment under Article 15 of the Uniform Code of Military Justice for his actions on March 29, 2007 consisted of a reduction in rank to Sergeant (and a reduction in pay grade to E-5) (suspended for six months), a forfeiture of $1,545.00, and an oral admonishment.

After completing his tour of duty in Iraq, upon plaintiff's return to the United States in 2008, plaintiff was assigned to the Warrior Transition Battalion at Fort Bragg, North Carolina, where his assigned primary mission was treatment and/or Medical Evaluation Board processing. The parties have stipulated that, on February 6, 2009, plaintiff Small was diagnosed with Post-Traumatic Stress Disorder (PTSD) by a clinical psychologist.[3]

The administrative record in this case reflects an extensive history of medical care and treatment received by plaintiff at the Womack Army Medical Center in Fort Bragg. Upon his arrival in Fort Bragg, on June 17, 2008, plaintiff was evaluated by Dr. Kirkland at the Womack Army Medical Center Psychology Department, who noted that plaintiff suffered from post-concussion syndrome, depression and adjustment disorder.  Two days

---

[2] Plaintiff's submissions seeking to recover attorney's fees and expenses are inconsistent with regard to the sought after sum. In plaintiff's June 22, 2015 application for legal fees, plaintiff seeks $82,725.00 in attorney's fees and $350.00 in expenses. In plaintiff's reply to defendant's opposition to plaintiff's application for legal fees and expenses, plaintiff argues that he "should be allowed his request for $82,750 in attorney's fees and $350.00 in costs."

[3] According to The Diagnostic and Statistical Manual of Mental Disorder of the American Psychiatric Association 424 (4th ed.), "[t]he essential feature of Posttraumatic Stress Disorder is the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity. . . . The characteristic symptoms resulting from the exposure to the extreme trauma include persistent re-experiencing of the traumatic event . . . , persistent avoidance of stimuli associated with the trauma . . . and persistent symptoms of increased arousal."

later, on June 19, 2008, Dr. Cannon at Fort Bragg indicated that plaintiff had a primary diagnosis of PTSD and referred him for a further psychiatric consultation. According to plaintiff's medical records, on July 1, 2008, plaintiff underwent a neurological evaluation at Fort Bragg by Dr. Galvis, "following [plaintiff's] complaints of short-term memory loss." Plaintiff's medical records indicate that he was tested for traumatic brain injury on July 1, 2008 in order to assess his cognitive abilities. Based on the test results, Dr. Galvis described plaintiff's cognitive abilities as moderately impaired and recommended plaintiff undergo cognitive therapy treatment due to his traumatic brain injury. Plaintiff participated in cognitive therapy for several weeks, and, on August 20, 2008, Dr. Galvis retested plaintiff's cognitive abilities and determined that plaintiff had "met therapy goals" and "maximized functional gains in therapy" such that "cognitive therapy is no longer warranted."

On October 15, 2008, plaintiff was evaluated by another physician, Dr. Camos, who indicated that plaintiff had been diagnosed with TBI and PTSD. Dr. Camos noted that, at plaintiff's request, Dr. Camos was referring plaintiff to an MOS [Military Occupational Speciality]/Medical Retention Board (MMRB). Dr. Camos indicated in the referral memorandum that plaintiff's conditions were medically disqualifying pursuant to "AR [Army Regulation] 40-501, Chapter 3," and that an MMRB should be initiated.[4]

In February 2009, plaintiff's chain of command directed that he undergo a mental health evaluation, or a Command Directed Mental Health Evaluation (CDMHE). Accordingly, on February, 6, 2009, Dr. Krolick administered to plaintiff a "CDMHE because of alleged incidents of lying and making false accusations, failure to obey an order about paying child/family support, a history of UCMJ for mistreatment of a prisoner, and pending UCMJ or Court Martial for disobeying an order." Dr. Krolick, a clinical psychologist, concluded in his mental status evaluation report that plaintiff's diagnosis represented PTSD; but indicated that plaintiff met the retention requirements of Chapter 3, AR 40-501, that "no restrictions were necessary," and that there was "no evidence that his condition would warrant disposition through medical channels." Mr. Small continued to receive mental health care from Dr. Krolick during his assignment to the WTB until the time of his separation from the Army. A review of the administrative record indicates that plaintiff was never found by Dr. Krolick to fail medical retention standards.[5]

On December 28, 2009 the Fort Bragg Consolidated Installation MOS/Medical Retention Board (MMRB) released a memorandum regarding its evaluation of plaintiff Small. The memorandum stated that, on October 29, 2009, the MMRB evaluated plaintiff's ability to perform the physical requirements of his military occupational specialty

---

[4] A Military Occupational Specialty/Medical Retention Board (MMRB) is an "administrative screening board" that evaluates whether soldiers with a permanent physical profile of 3 or 4 have the "physical ability to perform their duties in a worldwide field or austere environment."  Army Reg. 600-60 paragraph 2-1 (Feb. 28, 2008).

[5] Subsequently, plaintiff was seen by Dr. Krolick on May 6, 2010, June 17, 2010, October 7, 2010 and January 27, 2011.

based "on a thorough review of his most recent permanent physical profile dated 15 October 2008 and all pertinent records and reports." The MMRB determined that "SSG Small's limitations imposed by his permanent profile are so prohibitive they preclude retraining and reclassification into any MOS [Military Occupational Specialty] in which the Army has a requirement." The MMRB stated: "[t]he Soldier's ability to satisfactorily perform the duties of his office, grade, rank, or rating in such a manner as to reasonably fulfill his military obligation on active duty is questionable." Consequently, the MMRB directed plaintiff's commander to "initiate immediate coordination with the Medical Treatment Facility Physical Evaluation Board Liaison Officer (PEBLO) to obtain additional information and the scheduling of an MEB." The MMRB also stated that:

> [t]he Soldier's case will be forwarded to a Physical Evaluation Board (PEB) regardless of the MEB findings and recommendations, so long as the Soldier retains a P3 profile. . . . If the Soldier's profile is downgraded to P2 and the Soldier meets medical retention standards, the Soldier will be returned to duty and this headquarters notified.

The MMRB's findings and recommendations regarding plaintiff Small were approved on December 11, 2009 by Major General Allyn, Deputy Commanding General, Fort Bragg, North Carolina.

Plaintiff began pre-MEB processing in January 2010, but an MEB was never commenced.[6] On March 16, 2010, plaintiff was evaluated by an Army psychiatrist, Dr. Rosse, during a Medical Evaluation Board Specialty Care Consult. In the narrative summary drafted by Dr. Rosse, Dr. Rosse indicated that plaintiff had major depressive disorder, PTSD, and traumatic brain injury. Specifically, in his diagnosis, Dr. Rosse stated

---

[6] As explained by Tracye Baldwin, Chief of Patient Affairs Branch, Womack Army Medical Center, in her December 19, 2011 affidavit:

> During a "pre-MEB," Soldiers meet with several possible specialty clinics and specialists who render their medical assessments.  After receiving the assessments of all pertinent specialists, the Military Treatment Facility (MTF) commander conducts a medical examination of the Soldier referred for evaluation. Then, if it appears the soldier is not medically qualified to perform duty, the MTF commander will refer the soldier to a MEB.  It is upon referral to a MEB that a Soldier's name is entered and tracked in the MEBITT database.

(internal citations omitted). She continued:

> A diligent search of the MEBITT [Medical Evaluation Board Internal Tracking Tool] database reveals no entry for Mr. Dexter Small. Consequently, he did not undergo a MEB at Womack Army Medical Center during the timeframe 1998 until present.

that plaintiff's "subjective history would meet criteria for a Major Depressive Disorder, . . . and would meet criteria for Posttraumatic Stress Disorder. . . ." Dr. Rosse noted that "[t]here is association between his deficits and the stressors of a combat environment." Based on his evaluation of plaintiff, Dr. Rosse concluded that "[t]he Soldier's psychological conditions are medically disqualifying in accordance with AR 40-501."

On March 31, 2010, plaintiff's company commander, Captain Romey Smith, Jr., notified plaintiff of his intent to process him for separation under Army Reg. 635-200, Active Duty Enlisted Separations, Chapter 14-12c, for commission of a serious offense. During his stay at Fort Bragg, plaintiff was repeatedly reprimanded and counseled, over a period of 23 months from June 2008 to April 2010, for failing to obey orders or regulations, failing to report to his assigned place of duty, insubordinate conduct, and for missing appointments. Because plaintiff was being considered for administrative separation from the military in accordance with Army Regulation 635-200 due to misconduct, plaintiff's commander requested a behavioral health evaluation of plaintiff Small. On April 8, 2010, plaintiff was evaluated by Dr. Grohmann, a Clinical Psychology Resident at Womack Army Medical Center, "at the [plaintiff] commander's request . . . pertaining to separation under CH 14-12, AR 635-200." In the Report of Behavioral Health Evaluation, Dr. Grohmann found plaintiff to be suffering from PTSD and major depressive disorder. Dr. Grohmann observed that although "this [service member] is mentally responsible, can distinguish right from wrong, and possesses sufficient mental capacity to understand and participate intelligently as a respondent in any administrative proceedings," plaintiff nevertheless "has a psychiatric condition that is of sufficient severity to warrant disposition through military medical channels." Dr. Grohmann indicated on the Report of Behavioral Health Evaluation form: "The Service member does not meet medical retention standards as defined by AR 41-501, and was referred to the Physical Evaluation Board (PEB)."

Subsequently, on June 21, 2010, Captain Smith, plaintiff's commander, initiated administrative proceedings to separate plaintiff from the Army pursuant to Army Regulation 635-200, Active Duty Enlisted Administrative Separations, Chapter 14, Paragraph 14-12c, commission of a serious offense. Specifically, in the memorandum notifying plaintiff Small of Captain Smith's intention to recommend plaintiff's discharge, Captain Smith explained:

> The reasons for my proposed action are that you have been derelict in the performance of your duties on 4 separate occasions; you have made 8 false official statements; you have disobeyed lawful orders from a Non-Commissioned officers [sic] 10 times; you disobeyed a direct order from a Commissioned officer 33 times; you failed to be at your appointment place of duty on 20 different occasions; you assaulted someone with a deadly weapon; you have failed to pay your just debts 8 different times, you committed a larceny of a value over $500; and you filed a false and fraudulent claim against the United States.

Captain Smith recommended that plaintiff receive an Other than Honorable characterization of service discharge. After plaintiff received the memorandum regarding

his proposed discharge and consulted with counsel, plaintiff elected to have a hearing regarding the proposed separation action before an administrative Board. Following plaintiff's request for a hearing, the administrative separation action pertaining to plaintiff Small was referred to the standing Warrior Transition Battalion Board "to determine whether SGT Small should be separated from the United States Army prior to the expiration of his current term of service, pursuant to the provisions of Army Regulation 635-200, Chapter 14, Paragraph 12c, for commission of a serious offense."

On December 10, 2010, an Administrative Separation Board convened at Fort Bragg pursuant to Army Regulation 635-200 to consider plaintiff's case. The Board consisted of three service members and considered nine different instances of plaintiff's alleged misconduct. After presentation of evidence by both parties, including testimony of witnesses, and hearing plaintiff's unsworn statement, during which plaintiff was represented by counsel, the Board deliberated for approximately forty minutes and found that plaintiff Small had committed the alleged misconduct. The Board recommended that plaintiff be discharged from the Army with an Other Than Under Honorable Conditions characterization of service.

Following the Board's recommendation, on December 22, 2010, plaintiff's counsel submitted a memorandum to the separation authority, Commander of the XVIII Airborne Corps, Fort Bragg, North Carolina, requesting medical processing for plaintiff. In the memorandum, plaintiff's counsel stated:

> [w]hile SGT Small's actions while assigned to Warrior Transition Battalion (WTB) were wrong, and are his responsibility, disposition through medical channels is most appropriate for SGT Small.
>
> . . .
>
> Paragraph 1-33 of AR 635-200 establishes a strong preference for disposition through medical channels.
>
> . . .
>
> Paragraph 1-33 of AR 635-200 *requires* that when a Soldier "does not meet the medical fitness standards for retention (see AR 40-501, chap 3), he/she will refer the Soldier to a Medical Evaluation Board (MEB) in accordance with AR 40-400. The administrative separation proceedings will continue, but final action by the separation authority will not be taken, pending the results of MEB." SGT Small does not meet the medical fitness standards for retention. Nevertheless, his Medical Evaluation Board (MEB) has been stopped numerous times and has yet to be completed.
>
> . . .
>
> Because the circumstances of SGT Small's case warrant disability processing. . . SGT Small's separation should be processed through medical channels.

(emphasis in original).

On February 4, 2011, in response to plaintiff's counsel's December 22, 2010 memorandum, "an administrative law attorney," Captain Amy McCarthy, completed a

legal review of the administrative separation proceedings, and noted that "[n]o evidence contained in this record shows that any medical treatment facility commander or attending medical officer has determined that SGT Small does not meet the medical fitness standards for retention, nor is there evidence that SGT Small has begun the Medical Evaluation Board (MEB) process." Captain McCarthy concluded that the Board's December 10, 2010 proceedings complied "with the legal and procedural requirements of AR 635-200 and AR 15-6," and that the proceedings were legally sufficient.

On February 11, 2011, after a review of "the entire case file and all matters submitted regarding SGT Dexter Small," the General Court Martial Convening Authority, Major General Rodney O. Anderson, approved "[t]he findings and recommendations of the administrative separation board" and "direct[ed] that SGT Small be discharged from the U.S. Army with an **Under Other Than Honorable Conditions,** discharge." (emphasis in original). As a result of Major General Anderson's decision, plaintiff Small was "immediately" "reduced to the rank of PVT (E-1)." Major General Anderson ordered that plaintiff Small should be "expeditiously processed for separation" within five working days of Major General Anderson's approval decision. Thereafter, plaintiff was discharged from the Army on February 25, 2011.

The above-captioned case began in this court on May 2, 2011, when plaintiff Small filed a complaint in the United States Court of Federal Claims alleging that his administrative separation from the Army was improper. Plaintiff subsequently filed an amended complaint on September 2, 2011, and a second amended complaint on February 20, 2015, following remand proceedings at the Army Board of Correction of Military Records (ABCMR). In his complaint, plaintiff argued that his February 25, 2011 administrative separation from the Army, pursuant to the Army Regulation 635-200 (June 6, 2005)[7] Chapter 14, Section III, paragraph 14-12c, for commission of a serious offense, should have been "processed as a medical discharge through the usual and customary procedure utilized for soldiers not qualified for worldwide duties." Plaintiff sought a declaration from the court voiding his discharge classification Under Other Than Honorable Conditions, reinstating him to active duty in order to complete his medical evaluations, and ordering a "Medical Review Board to be conducted" to consider plaintiff for a disability discharge. Plaintiff also sought an award of back pay and allowances from February 22, 2011 to August 16, 2011.

On December 23, 2011, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant moved to dismiss certain of plaintiff's claims for military disability retired pay and reinstatement to the Army in order to receive an MEB on the basis that the court lacked subject matter jurisdiction and that plaintiff had failed to state a claim for relief. At the same time, defendant also moved to remand to the ABCMR plaintiff's remaining claims relating to whether plaintiff's discharge was proper. Defendant argued that "it would serve judicial economy and be in Mr. Small's

---

[7] Army Reg. 635-200 is still in effect as of November 21, 2016, despite a "Rapid Action Revision," dated September 6, 2011, on unrelated issues.

best interests to voluntarily dismiss his complaint, without prejudice, so that he may bring all of his claims before the ABCMR for consideration at the same time." According to defendant, the ABMCR "possesses the authority to consider all of Mr. Smalls' [sic] claims, including his claims for disability, back-pay, and condition of discharge." In plaintiff's submissions to the court on January 17, 2012 and February 16, 2012, plaintiff, represented by his current counsel, objected to defendant's motion to remand plaintiff's case to the ABCMR. After a conference with the parties on February 23, 2012, the court granted defendant's motion to remand the case to the ABCMR "on the issues of the propriety of plaintiff's discharge and his disability status." The Order explained that "defendant has represented that the Board can address both the disability and improper discharge issues raised by the plaintiff and should do so at the same time for efficiency purposes." The court directed the ABCMR to:

> address, among other issues, whether a Medical Evaluation Board (MEB) should have been conducted before Mr. Small was discharged from the Army; the Army's compliance with AR 635-200, para. 1-33 and AR 635-40, para. 4-9; the implications and remedies of no MEB having been conducted; the basis for the referral of Mr. Small to the March 16, 2011 interview with Dr. Mark Rosse; whether and how Dr. Rosse's medical conclusions were documented in plaintiff's personnel file and whether and how Dr. Rosse's medical conclusions were transmitted to other Army personnel; the impact of Dr. Rosse's conclusions on the medical evaluation process; what happened after Dr. Rosse's interview; what should have happened after Dr. Rosse's interview; and if requested and, as appropriate, a Board review of any plaintiff disability claims.

The court retained jurisdiction over the above-captioned case while the matter was on remand at the ABCMR.

The ABCMR issued a decision regarding plaintiff's remand on October 18, 2012, concluding that plaintiff had failed to demonstrate the existence of a probable error or injustice, and, "[t]herefore, the Board determined that the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned." Considering the specific issues raised, the ABCMR decided that:

> The available records indicate the applicant's administrative separation board was accomplished in compliance with applicable regulations with no violations or procedural errors which would have jeopardized his rights.  AR 635-200 at paragraph 1-33b provides that when the "MTF commander" or "attending medical officer" determines that when a Soldier is being processed for administrative separation under chapter 14 does not meet the medical fitness standards for retention, he or she will refer the Soldier to an MEB.  This portion of AR 635-200 limits the authority to determine whether a Soldier does not meet medical retention standards to the MTF commander or an "attending medical officer."
>
> . . .
>
> The totality of the evidence, including the medical record most proximate to

the applicant's discharge, overwhelmingly supports the conclusion that the applicant, upon his separation, met medical retention standards and did not have a condition warranting an MEB or entry into the PDES [Physical Disability Evaluation System].

The ABCMR concluded: "It appears the type of discharge directed and the reasons therefore were appropriate considering all of the available facts of the case."

Following the ABCMR's decision on remand, on November 5, 2012, the court held a status conference to discuss the future of the above-captioned case. Subsequently, on February 19, 2013, the government filed another motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. The parties also cross-moved for judgment on the administrative record.

On September 16, 2014, however, plaintiff filed a motion to remand Mr. Small's case to the ABCMR for a second time. In the motion to remand, plaintiff explained that on September 3, 2014, the Secretary of Defense had issued instructions to the Boards of Correction of Military and Naval Records, which "compel the Board to consider the impact of the PTSD on the serviceman's behavior which rendered him eligible for a discharge under less than honorable conditions."[8] Plaintiff asserted: "[b]ecause this directive would affect the rights of Plaintiff herein, Plaintiff moves the Court to remand this case to the Board of Corrections of Military Records with instructions to apply the standards set forth" in the Directive of the Secretary of Defense. After a status conference with the parties, on October 1, 2014 the court issued an order staying the above-captioned case to allow

---

[8] The September 3, 2014 Directive, titled "Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder," states:

> Liberal consideration will be given in petitions for changes in characterization of service to Service treatment record entries which document one or more symptoms which meet the diagnostic criteria of Post-Traumatic Stress Disorder (PTSD) or related conditions.
>
> . . .
>
> In cases where Service records or any document from the period of service substantiate the existence of one or more symptoms of what is now recognized as PTSD or a PTSD-related condition during the time of service, liberal consideration will be given to finding that PTSD existed at the time of service.
>
> . . .
>
> In cases in which PTSD or PTSD-related conditions may be reasonably determined to have existed at the time of discharge, those conditions will be considered potential mitigating factors in the misconduct that caused the under other than honorable conditions characterization of service.

plaintiff to "petition the Board of Corrections of Military Records based on the Secretary of Defense's September 3, 2014 instructions." Thereafter, plaintiff filed a request for reconsideration of his case with the ABCMR.

In plaintiff's request to the ABCMR for reconsideration of his case, plaintiff argued that "the time is ripe for this Board to consider whether his PTSD resulted in his misconduct." Plaintiff cited to the Secretary of Defense's September 3, 2014 Directive that instructed the ABCMR to consider PTSD or PTSD-related conditions as potential mitigating factors when reviewing a servicemember's misconduct that led to a Under Other Than Honorable Conditions characterization of service. According to plaintiff, "[t]o follow the directives of the Secretary of Defense, this Board must consider whether his PTSD, TBI, sleep disorders and all the drugs he [Mr. Small] was prescribed to combat his medical problems were factors working on his judgment." Plaintiff specifically requested that the ABCMR "find his TBI, PTSD and sleep disorder, combined to mitigate his behavior and upgrade his discharge classification to Honorable."

On January 22, 2015, the ABCMR considered plaintiff's request for reconsideration. In its reconsideration decision, the ABCMR explained that Mr. Small's case had been remanded by the court due to "initiatives of the Secretary of Defense issued on 3 September 2014, with instructions to the Boards of Correction of Military and Naval Records." The ABCMR explained:

> on 3 September 2014 the Secretary of Defense directed the Service Discharge Review Boards and Service Boards for Correction of Military/Naval Records (BCM/NRs) to carefully consider the revised PTSD criteria, detailed medical considerations and mitigating factors when taking action on applications from former service members administratively discharged UOTHC and who have been diagnosed with PTSD by a competent mental health professional representing a civilian healthcare provider in order to determine if it would be appropriate to upgrade the characterization of the applicant's service.

Given the new September 3, 2014 instructions from the Secretary of Defense concerning PTSD, in its January 22, 2015 decision, the ABCMR explained that the court had "directed this Board to consider the impact of PTSD on the serviceman's behavior which rendered him eligible for a discharge under less than honorable conditions." According to the ABCMR, "[s]oldiers who suffered from PTSD and were separated solely for misconduct subsequent to a traumatic event warrant careful consideration for the possible recharacterization of their overall service." The ABCMR stated that, "[i]n cases in which PTSD or PTSD-related conditions may be reasonably determined to have existed at the time of discharge; those conditions will be considered potential mitigating factors in the misconduct that caused the UOTHC characterization of service."

With regard to plaintiff Small, the ABCMR stated that "[a] review of the applicant's record and the evidence that he provided shows that he was subjected to the ordeals of deployment and war while serving in Kosovo, Iraq, and Afghanistan," and that he encountered instances in which "he and his unit were engaged in firefights," also "he

experienced the loss of his Team Leader," and "he engaged with an Iraqi National who confessed to previously taking part in a firefight with the applicant's unit." The ABCMR explained that, according to the "medical evidence" presented, subsequent to those experiences in Kosovo, Iraq, and Afghanistan, "the applicant [Small] was diagnosed with PTSD/PTSD-related symptoms by a competent mental health professional" while he was in the military. The ABCMR explained further that "[c]onditions documented in the record that can reasonably be determined to have existed at the time of discharge will be considered to have existed at the time of discharge." Because plaintiff was diagnosed with PTSD before his discharge, the ABCMR determined that, "it is reasonable to believe the applicant's PTSD condition existed at the time of discharge on 25 February 2011." As a result, the ABCMR concluded that "PTSD conditions most likely contributed to the misconduct that led to" plaintiff Small's discharge. The ABCMR decided that

> [a]fter carefully weighing that fact against the severity of the applicant's misconduct, there is sufficient mitigating evidence to warrant upgrading the characterization of the applicant's service to a general discharge under honorable conditions and restoring his rank/grade to SGT/E-5 with a date of rank and effective date of 7 January 2010.

The ABCMR, therefore, determined that the evidence presented during plaintiff Small's reconsideration was sufficient to justify a recommendation for partial relief and recommended that his discharge be upgraded to "General, Under Honorable Conditions." The ABCMR recommended "that all Department of the Army records of the individual concerned be corrected to show that he was discharged on 25 February 2011 with a characterization of service of 'General, Under Honorable Conditions' and his rank/grade as SGT/E-5 with a date of rank and effective date of 7 January 2010." The ACBMR also determined, however, that the evidence presented was insufficient to justify a recommendation to upgrade plaintiff Small's characterization of service to "honorable."

After receiving the January 22, 2015 ACBMR decision concerning plaintiff's request for reconsideration of his case, on February 20, 2015, plaintiff filed an amended complaint in the above-captioned case, and defendant filed a partial motion to dismiss and a motion for judgment on the administrative record. Plaintiff subsequently filed a cross-motion for judgment on the administrative record. In plaintiff's motion for judgment on the administrative record, he indicated that "the ABCMR upgraded Plaintiff's discharge and found no error in the discharge proceeding." Plaintiff also stated that "the U.S. Army issued an honorable condition general discharge on March 10, 2015." Plaintiff recognized that he was "bound by the ruling of the ABCMR," and, as a result of the ABCMR decision, "this litigation is ended." Plaintiff, through his attorney, argued that this "court should end this case with a ruling that adopts the findings and conclusions of the ABCMR." Plaintiff argued that this court should "enter a judgment on the administrative record and find that the Plaintiff is entitled to the upgraded discharge category, but not to any other relief sought in the Complaint, Amended Complaint or any motion filed to date." In response, defendant argued that by requesting that the court grant judgment on the administrative record affirming the January 22, 2015 ABCMR decision, but not granting any other relief sought in plaintiff's complaint, plaintiff has abandoned the claims in plaintiff's complaint. Defendant argued that "Mr. Small's request appears to be nothing more than a veiled

effort to support a future claim for attorney's fees pursuant to the Equal Access to Justice Act," and requested that the court grant defendant's motion for judgment on the administrative record and dismiss plaintiff's case. Shortly thereafter, plaintiff submitted a notice to the court stating "that the ABCMR has answered the issues raised by the pleadings and, therefore, the issues raised in Plaintiff's complaint are resolved." On June 3, 2015, the court issued an Order dismissing plaintiff's case and entering judgment "for plaintiff in accordance with the terms" of the ABCMR's January 22, 2015 decision.

Plaintiff timely filed an EAJA motion in the above-captioned case seeking to recover approximately $82,750.00 in attorney's fees and $350.00 in costs. Plaintiff argues that he is entitled to recover attorney's fees because he is a prevailing party and because the "position of the United States throughout this litigation was not substantially justified." In response, defendant argues that plaintiff may not recover attorney's fees and costs because "Mr. Small is not a prevailing party" and because "the Government's conduct both prior to and during litigation was substantially justified, because the Government took reasonable positions." Thereafter, the court heard oral arguments on plaintiff's motion for attorney's fees and costs.

## DISCUSSION

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975); see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602 (2001); Arcambel v. Wiseman, 3 U.S. (Dall.) 306 (1796); Ward v. United States Postal Serv., 672 F.3d 1294, 1297 (Fed. Cir. 2012); Nilssen v. Osfam Sylvania, Inc., 528 F.3d 1352, 1357 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2008). "Absent statute or enforceable contract, litigants pay their own attorney's fees." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. at 257 (citations omitted). This has come to be known as the "American Rule," and the only exceptions to this rule are those created by Congress and a small group of common law equitable exceptions which federal courts lack the power to enlarge.[9] See id. at 269; see also Nilssen v. Osfam Sylvania, Inc., 528 F.3d at 1357; Centex Corp. v. United States, 486 F.3d 1369, 1372 (Fed. Cir. 2007).  In addition, litigants seeking to recoup litigation expenses from the United States also face the barrier of overcoming sovereign immunity. See Chiu v. United States, 948 F.2d 711, 714 (Fed. Cir. 1991); Gavette v. Office of Pers. Mgmt., 808 F.2d 1456, 1460 (Fed. Cir. 1986); Griffin & Dickson v. United States, 21 Cl. Ct. 1, 4 (1990). Only a statutory directive waiving immunity can make the United States potentially liable in suit.  See Lane v. Pena, 518 U.S. 187, 192 (1996); United States v. Testan, 424 U.S. 392, 399 (1976); Soriano v. United States, 352 U.S. 270, 276 (1957); see also Hymas v.

---

[9] The Supreme Court in Alyeska noted the equitable exceptions of (1) willful disobedience of a court order, (2) bad faith on the part of a losing party, and (3) the common fund or common benefit exception allowing recovery of costs when the prevailing party is a trustee of property or is a party preserving or recovering a fund for the benefit of others in addition to himself.  Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. at 257-59.

United States, 810 F.3d 1312, 1817 (Fed. Cir. 2016).

As indicated by the United States Supreme Court, "Congress enacted EAJA, Pub. L. 96-481, Tit. II, 94 Stat. 2325, in 1980 'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government.'" Scarborough v. Principi, 541 U.S. 401, 406 (2004) (quoting H.R. Rep. No. 96-1005, at 9 (1980)); see also Gavette v. Office of Pers. Mgmt., 808 F.2d at 1459 (quoting H.R. Rep. No. 96-1418, at 5 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4984 (1980)) (Congress recognized that the American Rule deterred individuals and small businesses "from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights"); Hyperion, Inc., v. United States, 118 Fed. Cl. 540, 544 (2014); PCI/RCI v. United States, 37 Fed. Cl. 785, 788 (1997) (also quoting from H.R. Rep. No. 96-1418, at 5, reprinted in 1980 U.S.C.C.A.N. at 4984). When the House of Representatives considered EAJA, it provided the following rationale:

> For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

H.R. Rep. No. 96-1418, at 9, reprinted in 1980 U.S.C.C.A.N. at 4988.

To address these concerns, in 1980, Congress enacted EAJA. "The Equal Access to Justice Act (EAJA or Act) departs from the general rule that each party to a lawsuit pays his or her own legal fees." Scarborough v. Principi, 541 U.S. at 404-05 (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. at 257). The purpose of EAJA was to "'reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney's fees, expert witness fees and other expenses against the United States.'" Gavette v. Office of Pers. Mgmt., 808 F.2d at 1459-60 (quoting H.R. Rep. No. 96-1418, at 6, reprinted in 1980 U.S.C.C.A.N. at 4984); see also PCI/RCI v. United States, 37 Fed. Cl. at 788. "The primary purpose of the EAJA is to ensure that litigants 'will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.'" Wagner v. Shinseki, 640 F.3d 1255, 1259 (Fed. Cir. 2011) (quoting Scarborough v. Principi, 541 U.S. at 407) (citations and internal quotation marks omitted in original); see also Thompson v. Shinseki, 682 F.3d 1377, 1380 (Fed. Cir. 2012); Phillips v. Shinseki, 581 F.3d 1358, 1367 (Fed. Cir. 2009); Ellis v. United States, 711 F.2d 1571, 1576 (Fed. Cir. 1983) ("EAJA's primary purpose is to eliminate legal expense as a barrier to challenges of unreasonable government action."); Hubbard v. United States, 80 Fed. Cl. 282, 285 (2008), aff'd, 315 F. App'x 307 (Fed. Cir. 2009).

In order to accomplish its purpose, EAJA made two primary changes in the then prevailing law. Gavette v. Office of Pers. Mgmt., 808 F.2d at 1460 (citing H.R. Rep. No. 96-1418, at 9, 1980 U.S.C.C.A.N. at 4987). First, in 28 U.S.C. § 2412(b), EAJA extended the existing common law and statutory exceptions to the American Rule to make the

United States liable for attorney's fees just as private parties would be liable.  Gavette v. Office of Pers. Mgmt., 808 F.2d at 1460 (citing H.R. Rep. No. 96-1418, at 9, 17, 1980 U.S.C.C.A.N. at 4987, 4996); see also Scarborough v. Principi, 541 U.S. at 406 ("First, § 2412(b) made the United States liable for attorney's fees and expenses "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.").  The House Committee on the Judiciary stated that:

> Section 2412(b) permits a court in its discretion to award attorney's fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving other parties. . . . Thus, under this subsection, cases involving the United States would be subject to the "bad faith," "common fund" and "common benefit" exceptions to the American rule against fee-shifting.  The United States would also be liable under the same standards which govern awards against other parties under Federal statutory exceptions, unless the statute expressly provides otherwise.

Gavette v. Office of Pers. Mgmt., 808 F.2d at 1460 (citing H.R. Rep. No. 96-1418, at 17, 1980 U.S.C.C.A.N. at 4996); see, e.g., Centex Corp. v. United States, 486 F.3d at 1372; St. Paul Fire & Marine Ins. Co. v. United States, 4 Cl. Ct. 762, 769 (1984) (bad faith exception); Knight v. United States, 982 F.2d 1573, 1579-82 (Fed. Cir. 1993) (common fund exception); Heger v. United States, 114 Fed. Cl. 204, 210-11 (2014) (bad faith exception); MVM, Inc. v. United States, 47 Fed. Cl. 361, 363-65 (2000) (common benefit). Section 2412(b) reads:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b).  Prior to EAJA, many different statutes contained specific waivers of sovereign immunity for the United States with regard to recovering attorney's fees.  See Gavette v. Office of Pers. Mgmt., 808 F.2d at 1460.  EAJA was enacted to provide a "uniform rule" which would "make such specific exceptions unnecessary."  Id. (citing 28 U.S.C. § 2412 (Historical and Statutory Notes)).

EAJA provides that, "unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs . . . to the prevailing party in any civil action brought by or against the United States."  28 U.S.C. § 2412(b).  Reasonable fees and expenses shall be awarded to the prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d).

14

The EAJA statute also provides that,

"fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that…(ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.).

28 U.S.C. § 2412(d)(2)(A).

As indicated by the United States Court of Appeals for the Federal Circuit, "EAJA is a fee-shifting statute that allows a party who prevails in a civil action brought by or against the government to recover attorney's fees and costs." Davis v. Nicholson, 475 F.3d 1360, 1363 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007); see also Ward v. United States Postal Serv., 672 F.3d at 1297.  Because EAJA "exposes the government to liability for attorney fees and expenses to which it would not otherwise be subjected, it is a waiver of sovereign immunity." Ed A. Wilson, Inc. v. Gen. Servs. Admin., 126 F.3d 1406, 1408 (Fed. Cir. 1997) (citing Ardestani v. I.N.S., 502 U.S. 129, 137 (1991)); see also Massie v. United States, 226 F.3d 1318, 1321 (Fed. Cir. 2000) (explaining that EAJA is a waiver of sovereign immunity). "[T]he traditional principle [is] that the Government's consent to be sued 'must be "construed strictly in favor of the sovereign"….'" United States v. Nordic Vill., 503 U.S. 30, 34 (1992) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983) (quoting McMahon v. United States, 342 U.S. 25, 27 (1951))); see also Ardestani v. I.N.S., 502 U.S. at 137.

The court has considerable discretion to determine what level of attorneys' fees are reasonable and the amount of hours that should be compensated.  See Wagner v. Shinseki, 640 F.3d at 1261 (explaining that "a court has broad discretion in awarding attorney fees" and that a "litigant is only entitled to 'reasonable' attorney fees"); see also Hubbard v. United States, 480 F.3d 1327, 1334-35 (Fed. Cir. 2007) (In an EAJA context, "[t]he trial court has considerable discretion in determining reasonable attorney fees."); RAMCOR Servs., Grp., Inc. v. United States, 185 F.3d 1286, 1290 (Fed. Cir. 1999) ("The trial judge enjoys considerable discretion to determine eligibility for an EAJA award."); Ulysses Inc. v. United States, 117 Fed. Cl. 772, 785 (2014) ("EAJA provides that the Court, in its discretion, may reduce the amount to be awarded."); Metric Constr. Co., Inc. v. United States, 83 Fed. Cl. 446, 450 (2008).  Moreover, the court should not award fees "to the extent that the applicant ultimately fails to prove justification for each item of fee claimed[.]"  Fritz v. Principi, 264 F.3d 1372, 1377 n.1 (Fed. Cir. 2001).

As the United States Supreme Court indicated:

There is no precise rule or formula for making these determinations [for fee

awards].  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983).  Although in Hensley v. Eckerhart the Supreme Court addressed attorneys' fees available pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, the Supreme Court subsequently indicated that similar discretion by the trial court was warranted in an EAJA examination.  See Comm'r v. Jean, 496 U.S. 154, 161 (1990) ("In Hensley, we emphasized that it is appropriate to allow the district court discretion to determine the amount of a fee award, given its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'  The EAJA prescribes a similar flexibility.") (quoting Hensley v. Eckerhart, 461 U.S. at 437).  The United States Court of Appeals for the Federal Circuit also has applied the Hensley approach in EAJA cases.  See Hubbard v. United States, 480 F.3d at 1332-33; see also Former Emps. of Motorola Ceramic Prods. v. United States, 336 F.3d 1360, 1364 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); Prochazka v. United States, 116 Fed. Cl. 444, 458 (2014) (explaining that the Federal Circuit has held that the Hensley standard is to be used in determining the amount of fees awarded under EAJA); Info. Scis. Corp. v. United States, 88 Fed. Cl. 626, 633 n.3 (2009) (explaining that Hensley has been applied by the Federal Circuit in EAJA cases).

Under EAJA, eligibility for an award of attorneys' fees and expenses in a civil action requires: (1) that an eligible claimant be a prevailing party; (2) that the government's position viewed over the entire course of the dispute was not substantially justified; (3) that no special circumstances make an award unjust; and (4) that any fee application be timely submitted and supported by an itemized statement.  See 28 U.S.C. § 2412(d)(1)(A),(B); see also Scarborough v. Principi, 541 U.S. at 407-08; Comm'r v. Jean, 496 U.S. at 160-61; Norris v. Sec. & Exch. Comm'n, 695 F.3d 1261, 1264 (Fed. Cir. 2012); Ward v. United States Postal Serv., 672 F.3d at 1297; Libas, Ltd. v. United States, 314 F.3d 1362, 1365 (Fed. Cir. 2003).

The United States Supreme Court has stated that, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Hensley v. Eckerhart, 461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)) (standard is generally applicable in cases for which Congress authorizes an award of fees to a "prevailing party"); see also Dover v. McDonald, 818 F.3d 1316, 1318 (Fed. Cir. 2016) (explaining that the correct legal standard for determining whether a party is a prevailing party is that the party must receive some relief on the merits of his claim); Ward v. United States Postal Serv., 672 F.3d at 1297; Brewer v. Am. Battle Monuments Comm'n, 814 F.2d 1564, 1567-69 (Fed. Cir. 1987).  According to the Supreme Court, "the term 'prevailing party' in fee statutes is a 'term of art' that refers to the prevailing litigant." Astrue v. Ratliff, 560 U.S. 586, 591 (2010); see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. at 603.  The Federal Circuit has indicated in an EAJA analysis that "[a] party prevails in a civil action if he receives '"at least some relief on the merits of his claim.""  Davis v. Nicholson, 475 F.3d at 1363

(quoting <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. at 603-04 (quoting <u>Hewitt v. Helms</u>, 482 U.S. 755, 760 (1987))); <u>see also</u> <u>Dover v. McDonald</u>, 818 F.3d at 1318. The Supreme Court has indicated that "relief on the merits" requires a "material alteration of the legal relationship of the parties." <u>Buckhannon Bd. & Care Homes, Inc v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S at 604-05; <u>see also</u> <u>Davis v. Nicholson</u>, 475 F.3d at 1363; <u>Rice Servs., Ltd. v. United States</u>, 405 F.3d 1017, 1023 (Fed. Cir. 2005) ("Furthermore, the [Supreme] Court indicated that 'relief on the merits' at least required that the party obtain a court order materially changing the legal relationship of the parties."); <u>Halpern v. Principi</u>, 384 F.3d 1297, 1306 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2004). The United States Supreme Court further has held that the material alteration of the legal relationship of the parties must come from "the necessary judicial *imprimatur* on the change." <u>Buckhannon Bd. & Care Homes, Inc v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S at 604-05 (emphasis in original). When the court dismisses a complaint without reaching the merits, there is no judicial imprimatur. <u>See</u> <u>Hughett v. United States</u>, 110 Fed. Cl. 680, 687 (2013).

The United States Supreme Court and the United States Court of Appeals for the Federal Circuit have described a spectrum for distinguishing "prevailing parties" from parties who are not entitled to an award of attorney's fees. <u>Davis v. Nicholson</u>, 475 F.3d at 1363 (citing <u>Buckhannon Bd. & Care Homes, Inc v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S at 604). "At one end of the spectrum, enforceable judgments on the merits, even for nominal damages, and court-ordered consent decrees confer prevailing party status." <u>Id.</u>; <u>see also</u> <u>Dover v. McDonald</u>, 818 F.3d at 1318 (holding that "[t]raditional examples of relief on the merits include judgments on the merits and consent decrees"); <u>Rice Servs., Ltd. V. United States</u>, 405 F.3d at 1023; <u>Former Emps. of Motorola Ceramic Prods. v. United States</u>, 336 F.3d at 1364 ("Two examples of an alteration in the legal relationship between the parties were an enforceable judgment on the merits and a court-ordered consent decree."). "At the other end of the spectrum, interlocutory rulings that reverse dismissals for a failure to state a claim, reversals of directed verdicts for defendants, and achievement of desired results because a lawsuit brought about a voluntary change in the defendant's conduct" do not confer prevailing party status. <u>Davis v. Nicholson</u>, 475 F.3d at 1363 (quoting <u>Buckhannon Bd. & Care Homes, Inc v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S at 604); <u>see also</u> <u>Vaughn v. Principi</u>, 336 F.3d 1351, 1355 (Fed. Cir. 2003) (quoting <u>Buckhannon Bd. & Care Homes, Inc v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S at 604) (quoting <u>Hewitt v. Helms</u>, 482 U.S. at 760 and citing <u>Hanrahan v. Hampton</u>, 446 U.S. 754, 754 (1980))). The Supreme Court has explained that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." <u>Buckhannon Bd. & Care Homes, Inc v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S at 604-05 (emphasis in original). In <u>Buckhannon</u>, the Supreme Court rejected the "catalyst theory" which interpreted the phrase "prevailing party" as one who "achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." <u>Buckhannon Bd. & Care Homes, Inc v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. at 601, 606. The Supreme Court sought to prevent awarding attorney's fees "to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." <u>Buckhannon Bd. & Care</u>

Homes, Inc v. W. Va. Dep't of Health & Human Res., 532 U.S. at 606; see also Former Emps. of Motorola Ceramic Prods. v. United States, 336 F.3d at 1363-64; Vaughn v. Principi, 336 F.3d at 1355.

When a federal court is tasked with reviewing the actions of an administrative agency, securing a court remand to an agency may be sufficient to confer prevailing party status, however, not every such remand constitutes a grant of relief on the merits so as to confer prevailing party status. See 28 U.S.C. § 2412(d)(1)(A); see also Dover v. McDonald, 818 F.3d at 1316 (holding that "[a]n appeal of an agency decision 'is treated as a separate proceeding from the administrative proceeding, and a remand may [therefore] constitute the securing of relief on the merits.'" (citing Motorola, 336 F.3d at 1365)); Davis v. Nicholson, 475 F.3d at 1363 (holding that "remands do not necessarily provide any relief on the merits"); Kelly v. Nicholson, 463 F.3d 1349, 1354 (Fed. Cir. 2006) ("Securing a remand to an agency can constitute the requisite success on the merits."); Former Emps. of Motorola Ceramic Prods. v. United States, 336 F.3d at 1366). In general terms, the Federal Circuit "ha[s] developed tests based on Supreme Court cases for determining when court-to-administrative agency remands confer prevailing party status." Davis v. Nicholson, 475 F.3d at 1363 (citing Former Emps. of Motorola Ceramic Prods. v. United States, 336 F.3d at 1366) (quoting Melkonyan v. Sullivan, 501 U.S. 89, 97 (1991)). According to the Federal Circuit,

> where the plaintiff secures a remand requiring further agency proceedings because of alleged error by the agency, the plaintiff qualifies as a prevailing party (1) without regard to the outcome of the agency proceedings where there has been no retention of jurisdiction by the court, or (2) when successful in the remand proceedings where there has been a retention of jurisdiction.

Davis v. Nicholson, 475 F.3d at 1363 (quoting Former Emps. of Motorola Ceramic Prods. v. United States, 336 F.3d at 1366).

The Federal Circuit has explained that "[i]n a variety of contexts, we have specifically held that a remand does not confer prevailing party status where the remand is not predicated on an administrative error." Gurley v. Peake, 528 F.3d 1322, 1327 (Fed. Cir. 2008). Indeed, "[a]s a general rule, if the court issuing the remand order does not identify or acknowledge an error by the administrative agency, the remand is procedural in nature and does not convey prevailing party status upon the claimant." See Hughett v. United States, 110 Fed. Cl. 680, 687 (2013).The Federal Circuit also has stated:

> Where there has been a remand to an administrative agency without a judicial finding of administrative error or a concession of such error by the agency, the default rule is that the remand is not based on administrative error for EAJA purposes under the Motorola test. This default rule places the burden on the EAJA applicant to prove, based on the record, that the remand had to have been predicated on administrative error even though the remand order does not say so.

<u>Davis v. Nicholson</u>, 475 F.3d at 1366. Whether or not a remand was based on an agency error is not limited to the four corners of the remand order.  <u>Gurley v. Peake</u>, 528 F.3d at 1328; <u>Davis v. Nicholson</u>, 475 F.3d at 1365.  Rather, to be considered a prevailing party, the court must "conclude that the [r]emand [o]rder was either explicitly or implicitly predicated on administrative error," considering "the context of the remand."  <u>Gurley v. Peake</u>, 528 F.3d at 1327-28; <u>see</u>, <u>e.g.</u>, <u>Davis v. Nicholson</u>, 475 F.3d at 1365; <u>Kelly v. Nicholson</u>, 463 F.3d at1354 n.3.  The Federal Circuit has indicated that, if the remand order does not explicitly state that the remand is predicated on administrative error by an agency, then the evidentiary record should clearly indicate that the remand was based on agency error, in order for a moving party to establish its status as a prevailing party. <u>Davis v. Nicholson</u>, 475 F.3d at 1365 ("Because there is no judicial finding of agency error or concession of agency error and because the record is not clear, we hold that [plaintiff] failed to prove that the remand was based on administrative agency error" and, thus, "is not a prevailing party for EAJA purposes."); <u>see</u> <u>also</u> <u>Hughett v. United States</u>, 110 Fed. Cl. at 684 (noting that there was no language in the court's remand order indicating the court's position on the merits of plaintiff's claims in finding that the court's remand was not based on agency error). It is plaintiff's burden to show that the remand was of a type that confers prevailing party status. <u>See</u> <u>Hughett v. United States</u>, 110 Fed. Cl. at 686.

There are several circumstances in which a federal court may issue a remand to an agency that is not based on an agency error, and, thus, not sufficient to confer prevailing party status. <u>See</u> <u>Ward v. U.S. Postal Serv.</u>, 672 F.3d at 1300 (explaining that the Federal Circuit has "held that remands not rooted in agency error do not result in prevailing party status"). For instance, a procedural remand does not convey prevailing party status because it does not lead to any immediate judicial action on the merits. <u>See id.</u>; <u>see also</u> <u>Akers v. Nicholson</u>, 409 F.3d 1356, 1360 (Fed. Cir. 2005) (explaining that a joint request for a remand based on the possibility for settlement was not a remand based on agency error and did not confer prevailing party status); <u>Hughett v. United States</u>, 110 Fed. Cl. at 687. A court order remanding a case to an agency so that the agency will consider the effect of intervening legislation, or a change in the law, is not based on administrative error and does not confer prevailing party status. <u>See</u> <u>Thompson v. Shinseki</u>, 682 F.3d at 1382; <u>see also</u> <u>Gurley v. Peake</u>, 528 F.3d at 1327 (citing <u>Vaughn v. Principi</u>, 336 F.3d at 1360); <u>Davis v. Nicholson</u>, 475 at 1364 (explaining that "remands to consider the effects of intervening new law. . . do not qualify plaintiffs as prevailing parties"); <u>Akers v. Nicholson</u>, 409 F.3d at 1360. Additionally, a remand to consider newly discovered evidence will not confer prevailing party status. <u>See</u> <u>Ward v. U.S. Postal Serv.</u>, 672 F.3d at 1299-1300; <u>Hughett v. United States</u>, 110 Fed. Cl. at 686. A remand issued only for the purpose of judicial economy, or for the purpose of conducting further legal proceedings or clarifying facts, also will not confer prevailing party status. <u>See</u> <u>Ward v. U.S. Postal Serv.</u>, 672 F.3d at 1300 (citing <u>Gurley v. Peake</u>, 528 F.3d at 1324); <u>Davis v. Nicholson</u>, 475 F.3d at 1364 (finding that the remand order was not based on agency error and "merely afforded [plaintiff] an opportunity to litigate again"). "[R]emands that do not address administrative error but which merely provide another opportunity for adjudication are insufficient to convey prevailing party status on a plaintiff." <u>Hughett v. United States</u>, 110 Fed. Cl. at 688.

In the above-captioned case, to recover his attorney's fees and reasonable

expenses under EAJA, plaintiff must establish that he is a prevailing party. See 28 U.S.C. § 2412(d)(1)(A),(B). Plaintiff argues that he is a prevailing party because the court's October 1, 2014 Order, which allowed plaintiff to petition the ABCMR, was a remand based on agency error, and, on remand, plaintiff achieved some of the benefits that he sought in his complaint. In plaintiff's motion for attorney's fees and reasonable expenses, plaintiff argues that the October 1, 2014 Order was based on two errors that the Army had committed,[10] and that "[t]he directive by the Secretary of Defense was simply used to display the blatant errors committed by the agency."[11]

---

[10] Plaintiff alleged that (1) the Army erred in not finding that "Army Regulation 40-501 was violated when Mr. Small was not provided an MEB"; and (2) "the Army failed to find that Army Regulation 635-200 was violated when the commander failed to determine that Mr. Small's PTSD was a substantial cause for his misbehavior."

[11] On September 16, 2016, the court learned for the first time from defendant that, in February 2015, Mr. Small initiated another appeal to the ABCMR, independent from the case filed in this court, which resulted in a decision from the ABCMR on August 9, 2016. Apparently, Mr. Small pursued this separate action on his own, never notifying the court of the action, despite the ongoing case in this court in which he was represented by counsel. Mr. Small's counsel in the above-captioned case, Mr. Peter Sarda, represented to the court that "Counsel for the Plaintiff had no knowledge of the Plaintiff's filing an ABCMR in February, 2015, and did not consult with or support Plaintiff other than submitting copies of pleadings to the Office of the Surgeon General per their request." Mr. Sarda also indicated that "no effort by counsel for Plaintiff was expended by counsel for Plaintiff to further the Plaintiff's ABCMR claim which resulted in the August 10 [sic], 2016 decision of the ABCMR." Plaintiff's attorney, however, argues that "the action and findings of the [August 9, 2016] ABCMR clearly support the pleadings of the Plaintiff which were originally filed in this court." Plaintiff argues further that "the ABCMR findings show the government was not substantially justified in its defense" against plaintiff's claims. Defendant takes the position that "the August 2016 ABCMR decision has no impact on Mr. Small's pending application for attorney's fees" in the above-captioned case.

The court reviewed the ABCMR's August 9, 2016 decision, which found that the "preponderance of evidence indicates that [Mr. Small] met criteria for PTSD and that his condition did not meet medical retention standards at the time of his discharge on 25 February 2011." Based on this finding, the ABCMR recommended that "all Department of the Army records of [Mr. Small] be corrected by affording him processing through the Integrated Disability Evaluation System (IDES) to determine if he should have been discharged or retired by reason of physical disability." The ABCMR explained that, depending on the outcome of the Integrated Disability Evaluation System process, Mr. Small's administrative discharge from the Army may be changed. The August 2016 ABCMR decision does not determine that an error was made by the agency, rather it states that, given the information in plaintiff's file, "it is understandable that the applicant's separation proceedings do not contain a decision from the GCMCA as to the disposition of his case through medical channels as required by regulation." Although the January

The parties are not in agreement as to whether plaintiff qualifies as a prevailing party or the nature of the court's October 1, 2014 Order to remand the case a second time. Specifically, the parties disagree as to the reason for the remand. Contrary to plaintiff, defendant maintains that the October 1, 2014 remand was "based on a new policy directive from the DOD, not based on an allegation of administrative error." Defendant further points out that there was no concession or finding by the Army of an agency error prior to the second remand ordered by the court on October 1, 2014. Defendant also points out that, in plaintiff's motion for remand in 2014, plaintiff did not allege administrative error. Instead, defendant states that plaintiff requested that the court remand his case to the ABCMR after the Secretary of Defense issued a new Directive on PTSD.

On September 16, 2014, while the parties' cross-motions for judgment on the administrative record were pending before this court, plaintiff submitted a motion to remand his case to the ABCMR "with instructions to apply the standards set forth" in the September 3, 2014 Directive of the Secretary of Defense. Plaintiff's motion to remand stated:

> Plaintiff recently became aware of initiatives of the Secretary of Defense issued on September 3, 2014, with instructions to the Boards of Correction of Military and Naval Records.  Those instructions compel the Board to consider the impact of the PTSD on the serviceman's behavior which rendered him eligible for a discharge under less than honorable conditions. Because this directive would affect the rights of Plaintiff herein, Plaintiff

---

22, 2015 ABCMR had found that plaintiff's "separation processing was in accordance with applicable regulatory guidance," the August 2016 ABCMR found that, "in the interest of equity, there is a basis for referring the applicant's records to an MEB for review and, if appropriate, subsequent referral to an informal PEB." (emphasis added).

To the extent plaintiff argues that the findings set forth in the August 2016 ABCMR decision support plaintiff's position that the government's actions were not substantially justified, that argument is not persuasive. Any relief that plaintiff obtained from the recent August 9, 2016 ABCMR decision was outside the litigation in this court and was described by the ABCMR as an equitable decision. Plaintiff's counsel in the litigation before this court, Mr. Sarda, did not do any legal work, expend any effort, or contribute to Mr. Small's February 2015 application to the ABCMR, which resulted in the August 9, 2016 decision. Therefore, plaintiff's counsel is not entitled to EAJA fees related to that proceeding. Moreover, because defendant was unaware of the ongoing ABCMR action that plaintiff had independently initiated in February 2015, the government did not have the opportunity to question or oppose plaintiff's submissions to the ABCMR. Therefore, the issue of whether or not plaintiff and his counsel are entitled to EAJA fees in the above-captioned case is not impacted by the pro se, ABCMR case filed by Mr. Small.

moves the Court to remand this case to the Board of Corrections of Military Records with instructions to apply the standards set forth in the attached directive.

Plaintiff's September 16, 2014 motion for remand did not allege agency error. Also, in plaintiff's proposed judgment, filed on June 2, 2015, after the ABCMR had issued its decision, plaintiff also stated that "the Plaintiff moved to remand the case to the ABCMR on grounds that the Secretary of Defense had given new direction to the Corrections Board for the Military Services when evaluating cases dealing with Post Traumatic Stress Disorder."

Defendant did not oppose giving plaintiff the opportunity to petition the ABCMR in light of the new Directive. Therefore, on October 1, 2014, the court granted plaintiff's motion for remand, and directed that "[p]laintiff may petition the Board of Corrections of Military Records based on the Secretary of Defense's September 3, 2014 instructions." (emphasis added). Thereafter, plaintiff petitioned the ABCMR to reconsider his case, arguing that "the time is ripe for this Board to consider whether his PTSD resulted in his misconduct."

On January 22, 2015, the ABCMR considered plaintiff's request for reconsideration, and, in its decision, explained that Mr. Small's case had been remanded by the court due to "initiatives of the Secretary of Defense issued on 3 September 2014, with instructions to the Boards of Correction of Military and Naval Records." Given the new, September 3, 2014 Directive from the Secretary of Defense concerning PTSD, in its January 22, 2015 decision, the ABCMR explained that this court had "directed this Board to consider the impact of PTSD on the serviceman's behavior which rendered him eligible for a discharge under less than honorable conditions." According to the ABCMR, "[s]oldiers who suffered from PTSD and were separated solely for misconduct subsequent to a traumatic event warrant careful consideration for the possible recharacterization of their overall service."

The ABCMR explained that, according to the "medical evidence" presented, subsequent to those experiences in Kosovo, Iraq, and Afghanistan, "the applicant [Small] was diagnosed with PTSD/PTSD-related symptoms by a competent mental health professional" while he was in the military. The ABCMR explained that "[c]onditions documented in the record that can reasonably be determined to have existed at the time of discharge will be considered to have existed at the time of discharge." Because plaintiff was diagnosed with PTSD before his discharge, the ABCMR determined that, "it is reasonable to believe the applicant's PTSD condition existed at the time of discharge on 25 February 2011." As a result, the ABCMR concluded that, "PTSD conditions most likely contributed to the misconduct that led to" plaintiff Small's discharge. The ABCMR decided that "[a]fter carefully weighing that fact against the severity of the applicant's misconduct, there is sufficient mitigating evidence to warrant upgrading the characterization of the applicant's service to a general discharge under honorable conditions and restoring his rank/grade to SGT/E-5 with a date of rank and effective date of 7 January 2010." Thus, in light of the new Department of Defense Directive, the ABCMR determined that the evidence presented during plaintiff Small's reconsideration was sufficient to justify a

recommendation for partial relief regarding the requests plaintiff had brought to the ABCMR. The ACBMR also determined, however, that the evidence presented was insufficient to justify a recommendation to upgrade plaintiff Small's characterization of service to "honorable."

Although to support his position plaintiff's counsel points to the outcome of Mr. Small's case at the ABCMR, which resulted from this court's October 1, 2014 Remand Order, this court's analysis also depends on the reason for this court's October 1, 2014 Order. As explained above, in order for plaintiff to succeed on his assertion that he is a prevailing party under EAJA, this court's remand to the ABCMR on October 1, 2014 must have been based on a finding of "administrative error." See Ward v. U.S. Postal Serv., 672 F.3d at 1300; see also Gurley v. Peake, 528 F.3d at 1327. In determining whether the October 1, 2014 Remand Order[12] was based on "agency error," this court examines not only the 2014 Remand Order, but also the context in which the remand was granted. Gurley v. Peake, 528 F.3d at 1327-28; see also Former Emps. of Motorola Ceramic Prods. v. United States, 336 F.3d at 1366-67.

The record before this court does not support plaintiff's allegation that the October 1, 2014 Order was based on "agency error," despite plaintiff's repeated attempts to so argue. In fact, plaintiff does not point to any finding by the court that an agency error occurred, or was the motivation for the court to issue the October 1, 2014 Order. Nor could plaintiff do so because the court did not make a finding of error during the course of the above-captioned case. Notwithstanding plaintiff's attempt in its motion for attorney's fees and expenses to re-characterize the basis for its September 16, 2014 motion for remand, the record demonstrates that the basis for the remand was the Secretary of Defense's new Directive, and the court remanded Mr. Small's case to the ABCMR to see if plaintiff was entitled to relief under the new Secretary of Defense's September 2014 Directive. The Directive also did not concede errors on the part of the Department of Defense, nor, on remand, did the ABCMR find that an agency error had occurred. Instead the Directive indicated a change in policy aimed at helping a subset of former soldiers.

The October 1, 2014 Order was not based on the necessary type of judicial finding on the merits of plaintiff's case to confer prevailing party status on plaintiff. In fact, because plaintiff moved to remand his case to the ABCMR before the court could rule on the merits of plaintiff's claim, there was no occasion for the court to determine whether an agency error had occurred. The United States Court of Appeals for the Federal Circuit has considered whether a party can be considered as "prevailing" when a remand order occurred without a finding by the court of agency error. In Akers v. Nicholson, which is

---

[12] As to the 2012 remand issued by the court, the remand occurred at defendant's request, and, although it was opposed by plaintiff, it was granted by the court to promote judicial efficiency. Moreover, following the 2012 remand, the ABCMR upheld plaintiff's discharge and the terms of the discharge, and denied plaintiff relief. The court, therefore, does not consider the Remand Order issued in 2012 with respect to the current EAJA application. The current EAJA dispute only relates to the October 1, 2014 Remand Order.

relevant to this court's consideration of Mr. Small's case, there was a remand for re-adjudication after the passage of a new law. See Akers v. Nicholson, 409 F.3d at 1358. Mr. Small's case was remanded to the ABCMR for re-adjudication or reconsideration following the issuance of a new Directive by the Secretary of Defense. In Akers v. Nicholson, the Federal Circuit determined that, because the need for a remand in that case was based on the enactment of new legislation and "neither resulted from nor led to any immediate judicial action on the merits," the remand "did not place a judicial *imprimatur* on any decision concerning the merits" of that case, and, therefore, the plaintiff was not a prevailing party. Id. at 1359-60. In Mr. Small's case, this court stayed plaintiff's case following the issuance of the new, and potentially relevant, Directive issued by the Secretary of Defense in order to allow plaintiff the opportunity to petition the ABCMR for reconsideration of his case, given the policy instructions contained in the new Directive. As in Akers v. Nicholson, in Mr. Small's case, the court's remand did not result from a judicial action on the merits, nor did it lead to a judicial decision on the merits. The Federal Circuit has explained that when there has been a remand to an administrative agency without judicial action on the merits, including a finding of administrative error, "the default rule is that the remand is not based on administrative error for EAJA purposes," thus, a remand not based on such a finding of agency error cannot confer prevailing party status. Davis v. Nicholson, 475 F.3d at 1366.

Although the Federal Circuit has not previously held that a remand due to the passage of a new agency policy or directive is a procedural remand, as noted above, the Federal Circuit has held that "a remand to an administrative agency to consider the effects of legislation enacted while the case was on appeal does not constitute securing relief on the merits." Former Emps. of Motorola Ceramic Prods. v. United States, 336 F.3d at 1366. Logically, if a remand following a change in the law is found to be a remand not based on agency error and not based on a finding on the merits, then a remand based on a change in an agency's policy implemented by an agency Directive should lead to the same result. In both circumstances, the remand allows for the re-adjudication as a result of a change in the legal or policy landscape, as opposed to re-adjudication following a judicial finding of agency error. Having examined plaintiff's motion for remand, and the October 1, 2014 Remand Order, the court concludes that the October 1, 2014 remand did not result from judicial action on the merits of the case, but, instead, was in response to the Directive of the Secretary of Defense, which changed the way in which PTSD cases should be reviewed. To the extent plaintiff alleges that he was a prevailing party because, on remand, he achieved some of the benefits sought in his complaint, success on remand does not confer prevailing party status if the court Order remanding the case to the agency was due to a change in agency policy.

Furthermore, although plaintiff's motion for attorney's fees and expenses relies only on the October 1, 2014 Remand Order and plaintiff does not contend that he is a prevailing party based on the court's Order on June 3, 2015, which dismissed the case and entered judgment for plaintiff in accordance with the terms of the ABCMR decision, even if plaintiff had tried to rely on the June 3, 2015 Order to argue that he is a prevailing party, that Order lacked the judicial imprimatur necessary to establish plaintiff's position as a prevailing party. As the Federal Circuit has held on numerous occasions, there must be some judicial action on the merits of a case in order for there to be the necessary

judicial imprimatur to change the legal relationship between the parties. <u>See</u>, <u>e.g.</u>, <u>Akers v. Nicholson</u>, 409 F.3d at 1359. The June 3, 2015 Order dismissed plaintiff's case and ordered judgment "for the plaintiff in accordance with the terms" of the January 22, 2015 ABCMR decision. As stated in the June 3, 2015 Order, the court issued this Order after plaintiff "conceded in filings with the court 'that the ABCMR . . . has answered the issues raised by the pleadings and, therefore, the issues raised in Plaintiff's case are resolved.'" In fact, in plaintiff's motion for judgment on the administrative record following the January 22, 2015 ABCMR decision, plaintiff states that "he is bound by the ruling of the ABCMR and this litigation is ended." Following plaintiff's agreement that the litigation was concluded and that the issues raised in his complaint were resolved, the court dismissed the case on June 3, 2015 noting the terms of the January 22, 2015 ABCMR decision, but without considering the merits of plaintiff's claims. The court's judgment for plaintiff in accordance with the terms of the ABCMR decision does not have the judicial imprimatur needed to affect the legal relationship between the parties. In sum, having failed to prove that plaintiff is a prevailing party under the EAJA statute and existing case law precedent, the court finds that plaintiff's application for attorney's fees and costs must be denied.

## CONCLUSION

For the reasons stated above, plaintiff's application to recover his attorney's fees and costs is **DENIED**.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**

**Judge**